# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THREE CELLULAR PHONES DESCRIBED AS FOLLOWS: A) APPLE IPHONE WITH IMEI: 351458447571725, B) APPLE IPHONE WITH A CRACKED BACK AND SCREEN WITH IMEI: 356449102217733, AND C) TCL MODEL T607DL WITH IMEI 016324004486854 ALL CURRENTLY LOCATED AT THE FBI PORTLAND RESIDENT AGENCY | No. 2:24-mj-102-KFW |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Jonathan Duquette, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of three electronic devices described more particularly below and in Attachment A, which are currently in law enforcement possession, and the extraction from the devices of electronically stored information described in Attachment B.

2.      I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI). I have been in this position since June 2015, and I have been a Task Force Officer in FBI's Boston Division since January 2018. I am also a Border Patrol Agent with the U.S. Border Patrol and have been in this position since December 2009. In my career, I have utilized various investigative tools and techniques, to include the use of search warrants.

3.      This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested search warrant.

**PROBABLE CAUSE**

4.    For reference, a previous search warrant affidavit has been filed in the United States District Court, District of Maine Case No. 2:24-mj-67-KFW and is attached as Exhibit A. That warrant authorized the search of three Apple iPhones, two were recovered from the Honda HR-V and one from JOSHUA ESTRADA ("ESTRADA"). Exhibit A incorporates as Exhibit 1 a previous search warrant affidavit filed in the United States District Court, District of Maine Case No. 2:24-mj-54-KFW, which outlines the identification of ESTRADA, YANCARLOS ABRANTE ("ABRANTE"), and JASON JOHNSON-RIVERA ("JOHNSON-RIVERA") as subjects of the investigation. As documented in Exhibit 1, paragraph 18, ESTRADA and ABRANTE are verified members of the Gangster Disciples street gang.[1]

5.    Target Device 1 from Exhibit A was determined to be utilized by JOHNSON-RIVERA, and Target Device 2 from Exhibit A was determined to be utilized by ABRANTE. While reviewing Target Device 2, I located a Snapchat conversation between Snapchat username "glizzy_ftz" (display name "600% Glizzy" (owner)) and Snapchat username "reallyright7414" (display name J Sav) that occurred between November 17, 2023, and February 4, 2024. The conversation contained media, calls, audio messages, and text messages. The content of the media, calls, and audio messages was not captured. The content of the text messages was captured. Below are portions of the Snapchat conversation that occurred on February 4, 2024:

---

[1] The Gangster Disciples street gang was formed in Chicago, Illinois in the mid-1960s. It is structured like a corporation and led by a Chairman of the Board. The Gangster Disciples membership is estimated to be between 25,000 and 50,000, the majority of whom are Black males from the Chicago metropolitan area, though the Gangster Disciples are known to be active in 110 cities in 31 states.



² Redactions added by Affiant.



From: reallyright7414 J Sav
To: glizzy_ftv 600% Glizzy (owner)
I'm up one don't make it 2

2/4/2024 3:51:50 PM(UTC+0)

From: glizzy_ftv 600% Glizzy (owner)
To: reallyright7414 J Sav
Idc shots getting thrown tonight regardless

2/4/2024 3:52:50 PM(UTC+0)

From: reallyright7414 J Sav
To: glizzy_ftv 600% Glizzy (owner)
That's cool give a n███a a heads up let's make it interesting

2/4/2024 3:53:27 PM(UTC+0)

From: glizzy_ftv 600% Glizzy (owner)
To: reallyright7414 J Sav
Yu not coming outside gotta make yu come somehow

2/4/2024 3:54:19 PM(UTC+0)

From: glizzy_ftv 600% Glizzy (owner)
To: reallyright7414 J Sav
Idgaf what yu sayin

2/4/2024 3:54:35 PM(UTC+0)

From: glizzy_ftv 600% Glizzy (owner)
To: reallyright7414 J Sav
Im playing cribs

2/4/2024 3:54:37 PM(UTC+0)

From: glizzy_ftv 600% Glizzy (owner)
To: reallyright7414 J Sav
So let's go there

2/4/2024 3:54:42 PM(UTC+0)





6.      Based on my training and experience, I believe the above conversation is a dispute between ABRANTE and Snapchat user reallyright7414. ABRANTE wrote, "I banged my gun recently...yu never tagged an opp." I believe ABRANTE's reference to "banged my gun" was a reference to firing a gun at something or someone, and the term, "tagged an opp" likely means shot or killed the opposition or rival gang member. The conversation continued with Snapchat user reallyright7414 replying, "I'm up one don't make it 2." ABRANTE replied, "Idc shots getting thrown tonight regardless." Snapchat

user reallyright7414 later wrote, "Yk Maine laws" and continued, "Ik I'll do time for a gun" and "Happily." The references to "shots" and "gun" further bolster my belief that the above conversation is revolving around gun violence. Snapchat user reallyright7414's reference to "Maine laws" lead me to believe the user was in Maine.

7.      On November 24, 2023, Ahmed Sharif was murdered in Biddeford, Maine. The Maine State Police investigated Sharif's death and arrested Lorenze Labonte. Labonte is being held at the Cumberland County Jail (CCJ) without bail. On March 7, 2024, a Maine State Police Detective provided one of Labonte's jail calls from the CCJ to Saco Detective and FBI Task Force Officer (TFO) Ryan Hatch. The jail call was made between Labonte and 774-636-0214 ("0214") on or about February 8, 2024. I listened to the call between Labonte and another male, who Labonte called "J." During the call, "J" spoke about this kid, "Glizzy" and this "N***a, Mac." "J" said they have another "little kid" with them that is "protection." "J" said when he sees those guys he is going to "box them in" with his "v" (vehicle) and is going to beat up everybody. As documented in Exhibit 1, "Glizzy" is the known moniker for ABRANTE and "Mac" is the known moniker for ESTRADA.

8.      Open-source research on 0214 identified a CashApp account for "JSav" ($BosJSav7414). The mobile carrier was determined to be T-Mobile. Records from T-Mobile did not have a subscriber listed, which likely means the phone service is pre-paid (i.e. TracFone). The International Mobile Equipment Identity (IMEI) for 0214 was identified by T-Mobile as 351458447571720.

9.      Shortly after the shooting occurred in Saco, Maine on February 9, 2024, law enforcement identified JUSTIN NEVES, a/k/a "Savage" as a possible subject involved in the shooting. NEVES was quickly ruled out as a suspect. At that time, I

7

learned NEVES was under supervision by the United States Probation and Pretrial Services – District of Maine (US Probation) for Conspiracy to Violate Federal Firearms Law. I later learned that NEVES' original sentence date was December 4, 2019, when he was sentenced to 15 months imprisonment followed by three years supervised release. On January 24, 2023, NEVES supervision was revoked, and he was sentenced to 14 months incarceration followed by 12 months supervised release. I later learned that NEVES' probation officer communicates with NEVES using telephone number 774-636-0214.

10.     Based on information from two different law enforcement agencies that NEVES was in possession of a firearm, cash, and cocaine, US Probation decided to conduct a probation search of NEVES, his cellphone, his vehicle, his sober living home, and his girlfriend's apartment. The U.S. Probation Office was able to review NEVES GPS monitoring and learned that between March 22, 2024, and March 28, 2024, NEVES was at his girlfriend's residence daily for multiple hours.

11.     On March 28, 2024, U.S. Probation, members of the FBI (including your affiant), and officers with the Old Orchard Beach Police Department approached NEVES' girlfriend's apartment, located at 8C Pinebrook Terrace, Old Orchard Beach, Maine[3]. Prior to arrival, NEVES was determined to be there by checking location monitoring which was part of his conditions of probation. NEVES answered the door and was informed of the searches that would take place.

12.     During the search of NEVES' girlfriend's apartment, officers located a Mossberg 9mm handgun, 9mm ammunition, a magazine for a Glock handgun, and

---

[3] A subpoena was issued to the carrier of Estrada's cell phone (Target Device 3) and 8C Pinebrook Terrace, Old Orchard Beach, Maine was listed as the subscriber's address.

$1,560 in cash. The handgun, Glock magazine, and 9mm ammunition were stored in a locked safe. NEVES' girlfriend claimed ownership of the items in the safe and denied NEVES had access to the safe. Records obtained from the Bureau of Alcohol, Tobacco, Firearms and Explosives confirmed NEVES' girlfriend was the original purchaser of the Mossberg 9mm handgun. For the purpose of further investigation, officers seized three cellular phones ("the Target Devices") from the apartment. When asked for the passcodes to the Target Devices, NEVES refused to provide that information. NEVES' girlfriend was in possession of her phone during the search, and it was not seized as part of the Target Devices. Officers also found a Visa Debit Cash App card for NEVES. The front of the debit card was personalized with "$BosJSav7414."

13.    At the conclusion of the search, U.S. Probation filed a Petition for Warrant or Summons for Offender under Supervision and NEVES was arrested for violating his conditions of release. NEVES alleged violations included 1) Multiple failed drug tests, 2) Failure to submit to search, and 3) Possession of a firearm or knowingly be in the company of someone possessing a firearm.

14.    The Target Devices are further described as follows: Target Device A) Apple iPhone with IMEI: 351458447571725, Target Device B) Apple iPhone with a cracked back and screen with IMEI: 356449102217733, and Target Device C) TCL MODEL T607DL WITH IMEI 016324004486854.  Photographs of the Target Devices appear below.






15.     As described in paragraph 8, the IMEI for telephone ending in 0214 was 351458447571720. An IMEI is broken down into three sections, the Type Allocation

Code (TAC), the Serial Number (SN), and the Check Digit (D) or the Software Version Number (EE). The TAC is the first eight digits of the IMEI, the SN is the next six digits, and the last digit or digits is/are the D or EE. According to Official Document TS.06 version 21 published on February 21, 2022, by the GSM Association, the check digit shall always be transmitted to the network as "0". Therefore, because the first 14 digits of the IMEI match between Target Device A and 0214, Target Device A is assigned call number 774-636-0214.

16. On April 1, 2024, I received records from Snapchat on username "reallyright7414." The Snapchat records indicated the account was created on May 22, 2013. The display name was JSAVAGE7414. The verified email address and phone numbers were savbos74@gmail.com and 774-636-0214 respectively. As shown above, NEVES wrote, "Ik I'll do time for a gun" followed by, "Happily." I believe NEVES, a convicted felon, has been in possession of a firearm in violation of 18 USC 922(g)(1).

17. Based on my training and experience I know that individuals involved in illegal activity often use multiple cell phones to avoid law enforcement detection.

18. I am aware that NEVES has multiple tattoos that are associated with a street gang named the Gangster Disciples. Those tattoos include the letters "GD" on his stomach and a six-pointed star with the numbers "74", which correspond to the seventh and fourth letters of the alphabet, on the back of his right hand.

**TECHNICAL TERMS**

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data

communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20. Based on my training, experience, and research, I believe that the Target Devices have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

14

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

21.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, websites and other content that have been viewed via the Internet are typically stored for some period of time on the accessing device. This information can sometimes be recovered with forensics tools.

22.     Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

15

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Devices described in Attachment A to seek items described in Attachment B.

Respectfully submitted,

Jonathan Duquette
Task Force Officer
Federal Bureau of Investigation

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedures

Date:  Apr 02 2024

City and state:  Portland, Maine

_Judge's signature_

Karen Frink Wolf,  U.S. Magistrate Judge
_Printed name and title_

17

## ATTACHMENT A

The property to be searched consists of an A) Apple iPhone with IMEI: 351458447571725, B) Apple iPhone with a cracked back and screen with IMEI: 356449102217733, and C) TCL MODEL T607DL WITH IMEI 016324004486854. The Target Devices are currently located at the FBI Portland Resident Agency.

Photographs of the Target Devices appear below.

 



This warrant authorizes the forensic examination of the Target Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the Target Devices as described in Attachment A that relate to violations of 21 U.S.C. §§ 841, 846, 18 U.S.C. §§ 924(c), 922(g)(1) involving Target Subjects JUSTIN NEVES, a/k/a "Savage," JOSHUA ESTRADA, a/k/a "Mac," YANCARLOS ABRANTE, a/k/a "Glizzy," and JASON JOHNSON-RIVERA, JR., a/k/a, "Ouda," and others unknown, including:

   a.     Drug and firearm records, address books, calendars and scheduling data, drug notes, drug ledgers, seller lists, buyer lists;

   b.     Information contained on the Target Devices that may lead to the identification of the telephone numbers associated with the Target Devices.

   c.     Data indicating outgoing and incoming calls to drug and/or firearm sellers and buyers together with emails, chat, text, instant messages, and any communications sent over an application installed on the Target Devices;

   d.     Evidence indicating how and when the Target Devices' accounts were accessed or used, to determine the chronological context of account access, use, and events relating to the crimes under investigation and to the cell phone account owner;

   e.     Evidence indicating the Target Devices' account owner's state of mind as it relates to the crimes under investigation;

   f.     any information recording the schedules or travel of NEVES, ESTRADA, ABRANTE, JOHNSON-RIVERA, and their associates;

   g.     all bank records, checks, credit card bills, account information, and other financial records;

h.      Pictures or videos of firearms and/or drugs and drug associates; and

Computer hardware, software, and data contained on the Target Devices that are the instrumentalities of this crime and are evidence of offenses set forth in Title 21 U.S.C. §§ 841, 846, 18 U.S.C. §§ 924(c), and 922(g)(1).

i.      all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Target Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.